**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| LOUIS T. AGE, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL NO.: 15-CV-00658-JJB-SCR |
| | : | CRIMINAL NO.: 11-CR-00105-JJB-SCR |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
LOUIS T. AGE'S SUPPLEMENT TO HIS PREVIOUSLY FILED MOTION TO
VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America, by and through its attorneys, J. Walter Green, United States

Attorney, and Dustin M. Davis, Trial Attorney, United States Department of Justice, Criminal

Division, Fraud Section, hereby files its Response in Opposition to Louis T. Age's ("Petitioner")

Supplement to his Motion to Vacate, Set Aside, or Correct Sentence, pursuant to Title 28, United

States Code, Section 2255 ("Supplement") [ECF No. 537]. As the United States demonstrated at

Petitioner's trial, Petitioner intentionally defrauded Medicare of more than $17 million dollars

from 2005 through 2011. Accordingly, Petitioner's trial counsel was not ineffective in failing to

object to Petitioner's Pre-Sentence Report indicating the same, and the Court should deny

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence predicated on such. Moreover, no

evidentiary hearing is needed and Petitioner's Motion can be denied without oral argument.

##### I.  PETITIONER'S SUPPLEMENT

On May 17, 2016, Petitioner supplemented his original Motion to Vacate, Set Aside, or Correct Sentence, pursuant to Title 28, United States Code, Section 2255 arguing that the Court miscalculated Petitioner's advisory guideline sentencing range due to ineffective assistance of trial counsel [ECF No. 537 at 2].  Despite being sentenced on August 15, 2013, Petitioner alleges that he (Petitioner) did not see his Pre-Sentence Report ("PSR") until May 5, 2016, and upon reviewing the same, discovered that trial counsel did not object to the enhancements detailed therein. *Id.* ("counsel should have objected to all of them"). Petitioner intimates that if trial counsel had objected to the PSR, then presumably, Petitioner's advisory sentencing guideline range would have been lower. *Id.* ("Since Petitioner's attorney did not object to any of it, it therefore was used by the Court to sentence Petitioner.").

Although Petitioner makes the sweeping assertion that every enhancement was inappropriately applied, Petitioner only articulates reasons why he believes the loss amount attributable to Petitioner was erroneous.[1] *Id.* at 3-5. In arguing the $17.3 million dollar loss figure, which represented the sum of all claims South Louisiana Home Health Care, Inc. ("SLHH") billed to Medicare from 2005 through 2011, used by the Court in calculating the advisory guideline range pursuant to §2B1.1 was erroneous, Petitioner asserts: 1) no evidence was adduced at trial demonstrating that fraud was committed by SLHH during 2005 and 2006; and 2), the Government's argument that SLHH was started in 2005 with the intent of defrauding Medicare is undermined by the fact that SLHH was actually formed in 1992.

For the reasons detailed below, Petitioner's arguments are meritless.

---

[1] Aside from simply identifying the enhancements detailed in the PSR, Petitioner mentions only one other enhancement by name – "and there is nothing in the record that shows obstruction of justice." (ECF No. 537 at 5.)  However, Petitioner does not offer any support or analysis as to why he contends the obstruction enhancement was inappropriately applied.

2

## II.        PETITIONER'S TRIAL-FRAUD AS EARLY AS 2005

On March 22, 2013, Petitioner proceeded trial [ECF No 242]. During the course of the

Government's case-in-chief, the United States presented evidence that Petitioner, through SLHH,

began defrauding Medicare as early as 2005. The United States called as a witness Ayana Alvarez

("Alvarez"), Petitioner's daughter, who testified as follows:

> **Q:**    Now, this scheme you're talking about to defraud Medicare, was it
> in place when you got there in 2005, or was it put in place after you started?
> **A:**    No, ma'am, it was in place when I got there in 2005. We already had
> physicians in place; we had patient recruiters in place when I got there in
> 2005.

Trial Transcript, March 25, 2013 at 198. Alvarez additionally testified that the fraud, which

represented a majority of the SLHH's billings, continued through 2011. Alvarez testified:

> **A:**    When I got there in 2005, we were trying to make money.
> **Q:**    So were you providing legitimate medical services?
> **A:**    There were some patients that needed it, but the majority of patient's
> didn't.
> **…**
> **Q:**    Now, at the time when you got there in 2005, did you know how to
> run the scheme?
> **A:**    No. I learned over the next few years how to run the scheme, and I
> ran the scheme extremely well.
> **Q:**    And who taught you how to do it?
> **A:**    My dad, Verna, Ms. Odette.

*Id*. Additionally, on cross-examination, Alvarez again affirmed that the fraud scheme commenced

as early as 2005, but likely earlier. Alvarez testified:

> **Q:**    All right. You didn't get a chance to observe this family-fraud
> scheme in operation between 2000 and 2005, did you?
> **A:**    Well, I observed that they had patient recruiters.
> **Q:**    Who were they?
> **A:**    Milton Womack. I observed that Dr. Kirkpatrick was working there.
> Did I observe the scheme? Did I ever see my daddy like put a check in
> somebody's hand? No. But by the time I got there in 2005, it was clear what
> was going on.

3

Trial Transcript, March 26, 2013 at 275.  After offering the testimony of numerous witnesses and introducing various exhibits, including summary charts calculating the amount SLHH billed to Medicare, and what Medicare ultimately reimbursed SLHH, the petit jury found Petitioner guilty as charged [ECF No. 249]. [2]

### III.    PETITIONER'S PSR

Following Petitioner's conviction at trial, on June 4, 2013, the United States Probation Department prepared Petitioner's PSR [ECF No. 305]. Due to the counts of conviction, Petitioner's Base Offense Level, utilizing §2B1.1 of the United States Guideline manual, was calculated at **6**. *Id*. at ¶¶ 30-31. Additionally, Petitioner was assessed: a **+20** for causing a loss to Medicare exceeding $7,000,000, but less than $20,000,000, *id*. at ¶ 32; a **+2** for unlawfully using the identification of another, *id*. at ¶ 33; a **+4** for being the leader or organizer of a criminal activity involving five or more participants, *id*. at ¶ 35; a **+2** for abusing a position of trust as a Medicare provider, *id*. at ¶ 36; and a **+2** for obstructing justice, *id*. at ¶ 39. Petitioner's Total Offense Level was calculated at **36**, yielding an advisory guideline range of **188-235** months incarceration. *Id*. at ¶¶ 43 and 46. However, because the statutory maximum consecutive sentence for Petitioner's counts of conviction totaled **180** months incarceration, pursuant to § 5G1.1, Petitioner's advisory guideline range was **180** months incarceration. *Id*. at ¶ 46.

While Petitioner's advisory guideline range was calculated at the maximum possible statutory sentence, the United States nevertheless objected to the PSR arguing that Petitioner should also be assessed a **+2** for using sophisticated means, pursuant to § 2B1.1(b)(10), and a **+2**

---

[2] During a five-day jury trial, specifically, on March 28, 2013, Petitioner testified in his own defense generally denying his complicity in the charged fraud scheme [ECF No. 247]. *See also* Trial Transcript, March 28, 2013 at 115-254. That same day, Petitioner was found guilty of Count 1, conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and Count 18, conspiracy to pay and receive kickbacks, in violation of Title 18, United States Code, Section 371.

for mass marketing the fraud scheme, pursuant to § 2b1.1(b)(2)(A) [ECF No. 420]. Sentencing

Hr'g Tr. at 6-7. The United States further objected to the PSR seeking to correct the amount SLHH

billed Medicare during the conspiracy period for which Petitioner was convicted; the United States

argued that the amount should be reduced from $19.1 to $17.3 million. *Id*. at 5-6.

Although Petitioner's trial counsel did not file formal objections to the PSR, Petitioner's

counsel, on August 8, 2013, did object to the preliminary order of forfeiture filed by the United

States arguing that "the Government has not demonstrated any links between the [Petitioner's]

conduct and the amount gained through illicit activities" [ECF No. 335 at 2].

## IV.    PETITIONER'S SENTENCING HEARING

On August 15, 2013, the Petitioner's sentencing hearing commenced [ECF No. 343]. As

an initial matter, and contrary to Petitioner's allegation, the Court addressed the parties regarding

whether the PSR was received and reviewed [ECF No. 428]. Sentencing Hr'g Tr. at 4. The

colloquy between the Court and trial counsel and Petitioner proceeded as follows:

> **The Court:**    And, Mr. Hill, have your personally read the Pre-Sentence
> Report and gone over it with your client?
> **Mr. Hill:**    I have, Your Honor.
> **The Court:**    And, Mr. Age, have you read the Pre-Sentence Report?
> **[Petitioner]:**    Yes.
> **The Court:**    And have you discussed it with Mr. Hill, your counsel?
> **[Petitioner]:**    Yes.
> **The Clerk:**    Please speak up.
> **[Petitioner]:**    Yes, your Honor.
> **The Court:**    And has he advised you and answered the questions that you
> had concerning this report?
> **[Petitioner]:**    Yes, your Honor.
> **The Court:**    Alright.

*Id*.   Thereafter, the Court addressed the Government's objections, ultimately, rejecting the

Government's argument regarding the application of the sophisticated means enhancement, but

accepting the Government's argument regarding the mass marketing enhancement. *Id*. at 6-7.

Similarly, the Court found the total billings to Medicare totaled $17.3 million, not $19.1 million. *Id*. at 6. The Court ultimately determined Petitioner's Total Offense Level to be appropriately calculated at **38** (yielding an advisory guideline range of **235-293** months incarceration). *Id*. at 18.

Subsequent to addressing the United States' objections to the PSR, the Court permitted Petitioner's trial counsel to argue his objection to the United States' preliminary order of forfeiture. *Id*. at 7. Petitioner's trial counsel argued specifically, "this case has been one where there were a lot of numbers tossed about, but there's never been anything concrete that was backed up numerically in terms of loss, or in terms of gain, which Mr. Age obtained through this particular scheme." *Id*. at 8. Trial counsel continued that:

> . . . there is insufficient evidence to conclude that there is a particular number which should be forfeited, or a particular loss amount that should be attributed to this scheme because there hasn't been evidence presented as to the amount of claims that were fraudulent, the amount of money that was allegedly obtained from those claims, the amount of gain that Mr. Louis Age personally derived that that source.

*Id*. at 9.

The United States argued that the $9.2 million subject to forfeiture was a conservative calculation of loss, and only represented what Medicare paid SLHH based on referrals from three physicians who had made referrals to SLHH predicated upon kickback payments ("three physicians"). [3] *Id*. at 10-11. The United States continued that every dollar Medicare paid on claims based on kickback-induced referrals was fraudulently obtained, as Medicare would not have paid the claim if it were aware of the illicit kickback arrangement. *Id*. at 11 and 14. The Government concluded that Exhibit 81, introduced at trial, was a chart detailing the monies reimbursed to SLHH

---

[3] The three physicians used to calculate Petitioner's gain were Drs. Dahlia Kirkpatrick, Michael Hunter, and Anthony Jase [ECF No. 428, Sentencing Hr'g Tr. at 10].

by Medicare based on the kickback-induced referrals of the three physicians, which evidenced $9.2 million in Medicare reimbursements. *Id*. at 10.

The Court, after hearing the argument of the parties, concluded "the government's argument is correct; that there is sufficient evidence in the trial record to determinate that the $9,214,763 figure represents, as accurately as possible, the fraudulent claims that were *gained* by the defendants in this matter, and that will be my holding in that regard." *Id*. at 17 (emphasis added). The Court ultimately sentenced Petitioner to **180** months incarceration and further ordered Petitioner to pay restitution in the amount of $17,100,000, the full amount of Medicare reimbursements to SLHH during the charged conspiracy period. *Id*. at 29-31.

## V.   LEGAL STANDARD

### A.  28 U.S.C. § 2255 – Generally

Pursuant to Title 28, United States Code, Section 2555, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. As explained by the Fifth Circuit Court of Appeals, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised in a direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Acklen*, 47 F.3d 739, 741 (5th Cir. 1995). Vague or conclusory allegations are insufficient to raise a claim under 28 U.S.C. § 2255. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993); *United States v. Woods*, 870 F.2d 285 (5th Cir. 1989).

## B.  Ineffective Assistance of Counsel

After a defendant has exhausted or waived his right to appeal, his conviction and sentence are presumed to be fair and final. *United States v. Frady*, 456 U.S. 152, 164 (1982). Nevertheless, a claim of ineffective assistance of counsel may generally be raised in a Section 2255 motion as such a claim ordinarily "cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to develop the record on the merits of the allegations." *United States v. Higdon*, 832 F.2d 312, 313-14 (5th Cir. 1987). To prevail on a claim of ineffective assistance of counsel, Petitioner must show that (1) trial counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense. *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994). A failure to establish either deficient performance or prejudice defeats an ineffective assistance claim. *Id.* Thus, Petitioner must show that "there is a reasonable probability that but for trial counsel's errors [his] sentence would have been significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993).

## VI.    ANALYSIS

Unlike what Petitioner now claims, the record makes clear that Petitioner reviewed the PSR with trial counsel prior to his August 15, 2013 sentencing and had no objections to the same at that time.  Petitioner's prior representations in Court carry great weight and are presumed to be truthful. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.")

Now, in an effort to collaterally attack his sentence, Petitioner claims trial counsel was ineffective in failing to object to various sentencing enhancements, and specifically, in not

objecting to the loss amount.  This argument fails.  Petitioner received objectively reasonable assistance and suffered no prejudice.

### A.  Loss Amount

As detailed above, during Petitioner's trial, Petitioner's own daughter, who had previously pled guilty to her complicity in the scheme, testified that that Petitioner's fraud scheme commenced at SLHH as early as 2005 and continued through 2011. Trial Transcript, March 25, 2013 at 198. Alvarez detailed that a majority of SLHH's clients did not need the services SLHH provided, but that SLHH was only interested in making money. *Id*. at 198-99. Thus, the trial record makes clear that it was not error for the Court to conclude that claims submitted by SLHH to Medicare from 2005 through 2011 were fraudulent and the total amount of those claims, approximately $17.3 million, was appropriately used to calculate the relevant loss amount pursuant to §2B1.1. Likewise, it was not ineffective for trial counsel to not object to an otherwise appropriate calculation of loss and enhancement. In other words, trial counsel's performance was not objectively deficient.

Moreover, Petitioner suffered no prejudice. Based on the total billings to Medicare during the charged conspiracy period, the Probation officer identified **+20**, pursuant to § 2B1.1(b)(1)(K), as the appropriate enhancement as "[t]he loss exceeded $7,000,000, but was less than $20,000,000" [ECF No. 305]. PSR at ¶ 32. *Even if* the Court were to find that $17.3 million dollar figure representing the total billings to Medicare was erroneous for some reason, however, the Court has already concluded that Petitioner *gained* approximately $9.2 million dollars from the fraud scheme, which would also result in the same **+20** level enhancement. *See* USSG § 2B1.1(b)(1)(K) (applies where the "loss exceeded $7,000,000"). In other words, as described above, Petitioner's trial counsel specifically challenged the United States' proposed forfeiture

order, arguing the record was unclear as to fraudulent gain. Conservatively estimating Petitioner's

gain, and using only the Medicare reimbursements associated with the three physicians, the Court

determined that Petitioner gained approximately $9.2 million from his fraud scheme. *See*

Sentencing Hr'g Tr. at 17.  Thus, even if counsel had objected to the $17.3 million loss figure, and

even if this Court had instead used the defendant's gain ($9.2 million) as the loss estimate, for

sentencing purposes, the result would have been the same: a **+20** level enhancement. Petitioner

suffered no prejudice as a result of trial counsel's actions.

### B.  Other Enhancements

In his Supplement, Petitioner does not articulate why the other enhancements identified in

Petitioner's PSR are inappropriate. These conclusory allegations do not raise constitutionally

cognizable claims and should be dismissed. *Pineda*, 988 F. 2d at 23.

### VII.    CONCLUSION

Further, the United States submits that given the legal deficiencies in Petitioner's Motion, a hearing

on the Motion is unnecessary.

Respectfully submitted,

UNITED STATES OF AMERICA, by

J. WALTER GREEN
UNITED STATES ATTORNEY

By:      /s/   Dustin M. Davis
Dustin M. Davis, LBN 28012
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC 20005
(202) 355-5643 (telephone)
Dustin.Davis@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LOUIS T. AGE, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL NO.: 15-CV-00658-JJB-SCR |
| | : | CRIMINAL NO.: 11-CR-00105-JJB-SCR |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2016, a copy of the foregoing *United States' Response In Opposition To Louis T. Age's Supplement his previously filed Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255* was filed electronically with the Clerk of Court using the CM/ECF system.  I also certify that I have mailed the foregoing by United States Postal Service to defendant Louis T. Age, a non-CM/ECF participant.

By:     /s/     Dustin M. Davis
        Dustin M. Davis, LBN 28012
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, NW
        Washington, DC 02005
        (202) 355-5643 (telephone)
        Dustin.Davis@usdoj.gov